UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  | PRISONER |
|---|---|---|
| GARY SADLER | : | CIVIL NO. 3:01CV1786 (CFD)(WIG) |
| v. | : |  |
| GOVERNOR ROWLAND, ET AL. | : | FEBRUARY      2004 |

**MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY
AND TEMPORARY INJUNCTION DATED
JANUARY 8, 2004**

By pleading dated January 8, 2004, plaintiff in the above case filed a second Motion for Preliminary and Temporary Injunction seeking unlimited free photocopies and postage, at State expense, for his litigation. The first request was denied on December 5, 2003. See Ruling, Attachment A. This repeat motion should be denied as well because (1) plaintiff has failed to exhaust his administrative remedies, and (2) plaintiff does not have a right under the Department of Correction ("DOC") directives, nor under the U.S. Constitution, to demand the extraordinary relief requested.

**FACTS**

In an affidavit attached to his submissions, plaintiff admits that he does not qualify for free photocopies and postage under present DOC directives. Plaintiff's Affidavit of 1/2/04. He claims he does not have enough money to buy prison necessities and pay for litigation, including copying grievances to prove he has exhausted his administrative remedies. Id. Plaintiff does supply a copy of a grievance dated July 10, 2002, where he asked for free copies and postage in one instance and the request was granted. See Attachment B to plaintiff's affidavit.

An affidavit by Warden Michael Carter of the MacDougall Correctional Institution, plaintiff's facility, supplies current records showing that plaintiff is not indigent under DOC directives. Indigence status qualifies an inmate for certain free supplies. Also, his staff's search shows no recent grievances filed on the subject by plaintiff. See Affidavit of Warden Carter.

In the instant case, photocopy rules appear in DOC Directive 3.10 as follows:

8. Photocopying Expense. Fees for photocopying shall be received by the Department prior to documents being provided to the requestor.

   A. Other State Agency. There shall be no charge for another state agency for a copy of any document under 1000 pages. If the document is more than 1000 pages, the charge shall be twenty-five cents for each page. Any charge to another state agency may be waived in accordance with a reciprocal agreement to waive such fees.
   B. General Public. The charge for duplicating material for the general public shall be twenty-five cents for each page copied.
   C. Inmates. Photocopying for inmates shall normally be restricted to legal materials. Photocopying of any other materials shall be at the discretion and convenience of the Unit Administrator. An inmate shall be charged twenty-five cents for each page copied. The funds shall be deducted from the inmate's account prior to providing the inmate with the documents. The cost for an indigent inmate, as defined in Administrative Directive 6.10, Inmate Property, shall be waived.

DOC Directive 3.10 (8), Attachment B.

The postage rules provide as follows:

   D. Cost of Correspondence. Each inmate shall pay personal mailing expenses, except an indigent inmate. An indigent inmate, as defined in Administrative Directive 6.10, Inmate Property, shall be permitted two (2) free social letters each week, and five (5) letters per month addressed to the court or attorneys, including any request for speedy trial under Sections 54-82c and 54-186 of the Connecticut General Statutes. Additional free correspondence to courts and attorneys may be authorized by the Unit Administrator based upon the reasonable needs of the inmate.

DOC Directive 10.7 (4)(D), Attachment C.

As the above rules state, some postage and photocopy fees are waived for indigent inmates. An indigent inmate is one who has less than $5.00 in his or her inmate account at

admission, or whose account has not exceeded $5.00 for the previous 90 days. DOC Directive 6.10 (3)(C), Attachment D. The plaintiff is not indigent under these rules. See Inmate Account Records, Affidavit of Warden Carter, supra.

## **STANDARDS**

It is well settled that a preliminary injunction may be granted only when the party seeking the injunction establishes that (1) absent injunctive relief, he will suffer irreparable harms, and (2) either (a) that he is likely to succeed on the merits, or (b) there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party. See, e.g. Sperry International Trade, Inc. v. Government of Israel, 670 F.2d 8, 11 (2nd Cir. 1982); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 72 (2nd Cir. 1979). However, where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his case. Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577, 580 (2nd Cir. 1989); see also, Stratharos v. N.Y. City Taxi & Limousine Comm'n, 198 F.3d 317, 321 (2nd Cir. 1999) (citations omitted); Doe v. Bridgeport Police Dept., 2000 U.S. Dist. LEXIS 19329 (D.Conn. 2000). Where, as here, mandatory relief is sought, as distinguished from maintenance of the status quo, a strong showing of irreparable injury must be made since relief changing the status quo is not favored unless the facts and law clearly support the moving party. Doe v. New York University, 666 F.2d 761, 773 (2nd Cir. 1981). The injunction is an extraordinary remedy which should only be granted where the right to relief is

clear and in cases of severe irreparable harm. <u>Oden v. Britain</u>, 396 U.S. 1210, 90 S.Ct. 4, 24 L.Ed.2d 32 (1969).

With regard to preliminary injunctions and temporary restraining orders, the Federal Rules of Civil Procedure provide, in pertinent part, as follows:

> (b) **Temporary Restraining Order; Notice; Hearing, Duration.** A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if the party does not do so, the court shall dissolve the temporary restraining order. On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.
>
> **(c) Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

Rule 65(b), (c), F.R.Civ.P.

**ARGUMENT**

**1.      Failure to Exhaust Administrative Remedies**

With regard to any of his federal constitutional rights, the United States Supreme Court recently ruled that Connecticut prisoners must exhaust their prison administrative remedies before bringing suit as required by the Prison Litigation Reform Act of 1995, 45 U.S.C. § 1997e(a) (PLRA); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 982, 152 L.Ed.2d 12 (2002). Exhaustion is required regardless of whether the administrative remedy provides for monetary awards or might, for some other reason, be deemed futile. Booth v. Churner, 532 U.S. 731, 215 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

In the instant case, Directives 3.10(8) and 10.7(4)(D) refer the plaintiff to his unit administrator concerning photocopy and postage problems. Plaintiff can, and should, submit his photocopy problems as directed. Moreover, the Connecticut Department of Correction's Administrative Directive 9.6 provides a three step procedure under which prisoners may seek redress of grievances. Exhibit A to Affidavit of Warden Carter. The Directive applies broadly to any mater concerning "Individual employee and inmate actions" and "conditions of care or supervision and living conditions" Secs. 6(A)(3) and (5). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, supra at p. 532. It clearly applies to plaintiff's photocopy and mail claims. The PLRA requires that the inmate exhaust all available remedies, including appeals, before suit can be filed. Booth v. Churner, supra at 735; Poer v. Miles, 2000 U.S. LEXIS 20620 (W.D. Tex. 2000); Berry v. City of New York, 2002 U.S. Dist. LEXIS 10520 (S.D.N.Y. 2002); Gentry v. Maxwell, 2002 U.S. App. LEXIS 9637 (6th Cir. 2002); Howard v. Sherfield, 2002 U.S. App. LEXIS 22962; Shugart

v. Fleming, 2002 U.S. LEXIS 1611 (N.D. Tex. 2002); Flath v. Chavez, 2001 U.S. App. LEXIS 18125 (6th Cir. 2001); Alvarez v. United States, 2000 U.S. Dist. LEXIS 6079 (S.D.N.Y. 2000); Tripp v. Carter, 1999 U.S. LEXIS 16487 (N.D. Ill. 1999); McCrew v. Calvo, 2002 U.S. Dist. LEXIS 5900 (N.D. Cal. 2002); Hernandez-Salazar v. FMC Jail Unit, 2002 U.S. Dist. LEXIS 1169 (N.D. Tex. 2002); Thaddeus-X v. Williams, 2000 U.S. App. LEXIS 9664 (6th Cir. 2000); Utley v. Hiatte, 2000 U.S. App. LEXIS 5255 (6th Cir. 2000); Boyd v. Dept. of Correction, 2000 U.S. Dist. LEXIS 10806 (E.D. Pa. 2000); Reyes v. Punzal, 206 F. Supp. 2d 431 (W.D.N.Y. 2002).

Requests for injunctions for free services require proof of compliance with inmate grievance procedures in the same manner as other civil rights complaints. Ayers v. Uphoff, 1996 U.S. App. LEXIS 20093 (6th Cir. 1996). Plaintiff has not demonstrated satisfaction of this requirement. See, Affidavit of Warden Carter, supra at para. 4. Consequently, his request for injunctive relief should be denied.

**2.    No Right to Free Photocopies or Postage**

The DOC Directives applicable in the instant case indicate that a pro se prisoner litigant must pay for postage and 25 cents per page for photocopies unless he or she is indigent. Plaintiff cannot show that he is indigent. See Exhibit B to Affidavit of Warden Carter. Moreover, the court file in the instant case shows that he had funded litigation involving voluminous records. In 2002, he supplied the defendants with 853 copies of documents in response to defendant's requests for production. After requesting an injunction claiming insufficient funds, plaintiff has continued to file motions and copies of documents in this case. See, e.g., Plaintiff's Motion for Change of Venue and Memorandum in Opposition to Virginia Defendants' Motion to Dismiss.

The law is clear that the plaintiff has no protected right to free photocopying services. Soto v. Meachum, 1991 U.S. Dist. LEXIS 14824 (D. Conn. 1991). An inmate's right to access to the courts is not infringed by reasonable charges for copying services. Dugar v. Coughlin, 613 F. Supp. 849 (S.D.N.Y. 1985). His "right to access to the courts may be balanced against the State's legitimate interests, including budgetary concerns." Gittens v. Sullivan, 670 F. Supp. 119, 122 (S.D.N.Y. 1987) aff'd per curiam 848 F.2d 389 (2nd Cir. 1988). "There is simply no statutory or constitutional right to either free postage stamps or to free photocopies, particularly where, as here, the prisoner cannot show he is indigent." Lyons v. Meese, 1988 U.S. Dist. LEXIS 16957 (E.D. Vir. 1988) citing Twyman v. Crisp., 584 F.2d 352, 359 (10th Cir. 1978).

With respect to postage for litigation, the DOC Directive which gives indigent inmates five free stamped envelopes monthly, and which can be supplemented "based upon the reasonable needs of the inmate" (DOC Directive 10.7 (4)(D)), is not per se unconstitutional. In Gittens v. Sullivan, supra, our Court of Appeals upheld a New York Corrections Directive which allowed indigent inmates $1.10 per week for free stamps and an additional advance of at least $36 for postage for legal mail. The lower court there ruled:

> The prisoner's right to access to the courts may be balanced against the State's legitimate interests, including budgetary concerns.

Gittens v. Sullivan, 670 F. Supp. at 122. The Court went on to find the provision to be adequate to provide an indigent inmate with sufficient postage to prosecute any normal amount of litigation, and pointed to the "avalanche" of papers submitted by the plaintiff as proof enough of meaning access. Id. at 123.

In the instant case, the State of Connecticut supplies a similar amount to indigent inmates. Accordingly, a predecessor Connecticut rule was upheld in the past. See, e.g., Vincenzo v. Inglis, No. 3-89-083 (WWE) (Recommend Ruling, July 12, 1991), Attachment E. The current

7

rule should be upheld as well.  The Constitution does not require that an indigent inmate be provided with unlimited free postage, only a "reasonably adequate amount of postage for access to the courts."  Chandler v. Coughlin, 733 F. Supp. 641, 647 (S.D.N.Y. 1990); see also Zigmund v. Wynne, 1999 U.S. App. 20144 (2nd Cir. 1999).

That plaintiff may have to choose between commissary purchases and litigation sometimes is not a constitutional defect.  In Connecticut, an inmate's basic needs are supplied by the State regardless of an inmate's ability to pay, including food (DOC Directive 10.18, Attachment F), clothing (DOC Directive 6.10, Attachment D), shelter (DOC Directive 9.2, Attachment G) and medical care (DOC Directive 8.1, Attachment H).  Other items desired by inmates, including snacks, can be purchased from the DOC Commissary.  (DOC Directive 3.8, Attachment I).  Money is contraband in prisons.  Income and expenditures by inmates, including commissary purchases, are handled by debiting and crediting the Inmate's Fund Account, balanced daily.  (DOC Directive 3.7, Attachment J).

The DOC requirement that an inmate be indigent for a set period of time before being eligible for free photocopies is not unconstitutional.  In Nicholas v. Tucker, 114 F.3d 17 (2nd Cir. 1997) cert. denied 523 U.S. 1124 (1998) the Court of Appeals tested the validity of the provision of the Prisoner Litigation Reform Act which required even indigent inmates to pay court filing fees in installments based on average monthly deposits in their inmate accounts, or average monthly balance, over a six month period.  28 U.S.C. § 1915(b)(1).  In that case, as here, the plaintiff complained that the law was unconstitutional because it prevented him from spending his limited funds in the manner he chooses.  The Court found that rules requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of

living are not paid by the State.  Id. at 21 citing Boller v. Gunn, 107 F.3d 227 (4th Cir. 1997).  That precedent has proven dispositive by this Court in similar claims in the past.  See, e.g., Lebron v. Commissioner Armstrong, 2003 U.S. Dist. LEXIS 17337 (D. Conn. 2003).  We urge the Court to rule likewise here.

That plaintiff may experience delays in his litigation progress due to limited resources is also not a constitutional defect.  Even before the U.S. Supreme Court ruled that actual injury was required to state a claim of lack of access to the courts, Lewis v. Casey, 518 U.S. 343, 349 (1996), our courts considered such evidence in rejecting inmate challenges to limits on free litigation supplies.  As the Court ruled in Joseph v. Coughlin, 1994 U.S. Dist. LEXIS 17685 (N.D.N.Y. 1994), aff'd 60 F.3d. 811 (2nd Cir. 1995):

> A prisoner has a right to receive legal mail.  **Heimerle v. Attorney General,** 753 F.2d 10, 12-13 (2d Cir. 1985); **Davidson v. Scully,** 694 F.2d 50, 53 (2d Cir. 1982).  However, a prisoner must establish "actual injury" in order to prevail.  **Sands v. Lewis,** 886 F.2d 1166, 1171 (9th Cir. 1989) (actual injury must be alleged where an inmate's claim does not involve the prison's law libraries or denial of legal assistance ); **see also Purcell v. Coughlin,** 790 F.2d 263, 265 (2d Cir. 1986) (access to courts claim dismissed for failure to allege any injury stemming from denial of pens); **Sowell v. Vose,** 941 F.2d 32, 34-35 (1st Cir. 1991) (complaint dismissed for lack of actual injury when inmate failed to show denial of access to all his legal documents); **Johnson v. Moore,** 948 F.2d 517, 521 (9th Cir. 1991) (summary judgment granted to defendant where inmate did not substantiate his claim that a dismissal for untimeliness was attributable to the denial of photocopies); **Henthorn v. Swinson,** 955 F.2d 351, 354 (5th Cir.), **cert. denied,** 119 L.Ed. 2d 593, 112 S. Ct. 2974 (1992) (access to courts claim denied for failure to show injury stemming from an action that had been dismissed and subsequently reopened); **Griffin v. Coughlin,** 743 F. Supp. 1006, 1022 (N.D.N.Y. 1990); **Martin v. Lane,** 766 F. Supp. 641, 646 (N.D. Ill. 1991) (prejudice not shown when alleged denial of access resulted in late submission of motions papers since inmate was not penalized for late filing).  Without the plaintiff claiming that he suffered some injury from the alleged denial of his legal mail, the claim does not amount to a constitutional violation.
>
> In the case at bar, the plaintiff has failed to allege any adverse effect caused by the alleged denial of his legal mail.  Indeed, such a claim by the plaintiff may prove difficult because the plaintiff eventually received the criminal court transcript he requested soon after he complained about not receiving it.

9

Joseph v. Coughlin, supra.

Post Lewis v. Casey, it is absolutely clear that "[a] delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." Standley v. Leyder, 2001 U.S. Dist. LEXIS 2274 (S.D.N.Y. 2001) quoting Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y. 1995). Plaintiff must show actual injury, such as the denial of a legal claim. Newman v. Holder, 101 F. Supp. 2d 103, 107 (E.D.N.Y. 2000).

Similarly, in the instant case, plaintiff complains about a rule without demonstrating actual injury to his litigation. Accordingly, his request for injunctive relief should be denied.

## CONCLUSION

For all of the foregoing reasons, we urge the Court to deny the plaintiff's Motion for Preliminary and Temporary Injunction dated January 8, 2004.

                DEFENDANTS
                Governor Rowland, et al.

                RICHARD BLUMENTHAL
                ATTORNEY GENERAL


BY: _____
    Robert F. Vacchelli
    Assistant Attorney General
    110 Sherman Street
    Hartford, CT  06105
    Federal Bar #ct05222
    E-Mail:  robert.vacchelli@po.state.ct.us
    Tel.: (860) 808-5450
    Fax: (860) 808-5591

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this _____ day of February, 2004:

Gary Sadler # 236395
MacDougall-Walker Correctional Center
1153 East Street South
Suffield, CT 06080

Sr. Asst. Attorney General Mark R. Davis
Commonwealth of Virginia
Office of the Attorney General
900 East Main Street
Richmond, VA  23219

Steven R. Strom
Assistant Attorney General
Office of the Attorney General
110 Sherman Street
Hartford, CT  06105

_____
Robert F. Vacchelli
Assistant Attorney General