UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GARY SADLER                           :
                                      :     PRISONER
        vs.                           :     CASE NO. 3:01CV1786 (CFD)(WIG)
                                      :
JOHN ROWLAND, ET AL.                  :

## RULING ON MOTION TO DISMISS

        The plaintiff, Gary Sadler, filed this civil rights action, pro se and in forma pauperis pursuant

to 28 U.S.C. § 1915 against seven employees of the Connecticut Department of Correction ("DOC")

and ten employees of the Virginia Department of Correction.[1]

        Sadler is currently an inmate at the State of Connecticut MacDougall Correctional

Institution.  His claims relate to his prior incarceration at the State of Virginia Wallens Ridge Prison

from January to November 2000.  Sadler had been transferred there from a DOC facility by DOC

order pursuant to the Connecticut Interstate Corrections Compact, authorized by Conn. Gen. Stat.

§ 18-106, et seq.  He invokes 42 U.S.C. § § 1981, 1983, 1985 and 1986, and claims violations of the

First, Fourth, Eighth and Fourteenth Amendments to the U. S. Constitution as well as Connecticut

law.  In a separate ruling, the court has severed the claims against the Virginia defendants and

transferred them to the United States District Court for the Western District of Virginia.  The

Connecticut defendants move to dismiss the claims against them on eleven grounds, pursuant to

Red. R. Civ. P. 12(b)(1) through (7).  For the reasons discussed below, their motion to dismiss is

granted in part and denied in part.

---

[1] The Connecticut defendants are:  Former DOC Commissioner John Armstrong, Former
DOC Deputy Commissioner Jack Tokarz, Interstate Compact Supervisor Lynn Milling, DOC
Captain Masella, DOC Health Services employee Patricia Ottolini and DOC Lieutenants Woodcock
and Saladini.  Previous claims against former Governor Rowland and Attorney General Blumenthal
were withdrawn by way of the Amended Complaint dated July 3, 2003 as there were no claims
directed against them.

Standard of Review

When considering a Rule 12(b)(6) motion to dismiss[2], the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998).  Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims."  Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted).  In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

Facts

Keeping this standard in mind, the court accepts as true the following allegations taken from the amended complaint.

---

[2]The Court has set forth only the standard for a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  To the extent other standards apply to other sections of 12(b), the Court will note them below.

Sadler claims that the Connecticut Department of Correction transferred him to Wallens Ridge State Prison in Virginia ("Wallens Ridge") in January 2000. Wallens Ridge is a high security level prison. Sadler alleges that he had no disciplinary problems prior to his transfer. When he later learned that most inmates who had no disciplinary problems had been sent to a lower security level prison facility in Virginia, he wrote to defendant DOC Deputy Commissioner Tokarz on September 13, 2000[3], concerning his transfer to Wallens Ridge. The plaintiff alleges that Tokarz did not respond to his letter. During his incarceration at Wallens Ridge, correctional staff there failed to timely respond to his requests to informally resolve various complaints concerning his conditions of confinement and the Wallens Ridge grievance coordinator failed to properly respond to his grievances. Lynn Milling, the Connecticut Interstate Compact Supervisor, then sent memoranda to Sadler informing him that if the grievances he filed in Virginia were not resolved, he should send copies of the grievances to the Connecticut Department of Correction for review. Sadler alleges that the prison staff at Wallens Ridge refused to make copies of some of the complaints and grievances to send to Milling. Sadler claims that when he was able to send copies of the grievances to the Connecticut Department of Correction, he either never received a response to the grievances or the responses were untimely.

From January to March 2000, staff at Wallens Ridge failed to provide Sadler with proper clothing for outside recreation and placed him in a housing unit that permitted inmates and staff to smoke and he became sick as a result. Sadler wrote to DOC Captain Masella regarding these conditions, but received no response to his letters.

---

[3] The plaintiff's amended complaint, which was dated July 3, 2003 and filed on July 9, 2003, lists the date as September 13, 2003. As the plaintiff was only incarcerated at Wallens Ridge until November 3, 2000, the court assumes the plaintiff intended to list the date as September 13, 2000.

From April 2000 until November 2000, Wallens Ridge prison staff interfered with Sadler's mail. He complained to Milling, who referred the matter to DOC Captain Masella for investigation. Captain Masella found that Sadler had failed to provide proof of the interference with his mail. Sadler then re-submitted his complaint to Milling with such proof and she referred the matter to DOC Lieutenant Saladini. Lieutenant Saladini never responded to the complaint.

In March 2000, a Wallens Ridge correctional officer applied handcuffs to Sadler's wrists too tightly. Sadler alleges that he suffered injuries to his wrists as a result and did not receive medical treatment for his injuries.

In August 2000, a Wallens Ridge correctional officer sprayed Sadler with a cleaning agent. Other officers refused to provide him with immediate medical treatment, and he received such treatment only after he filed a grievance. Sadler sent a complaint to Lynn Milling regarding this use of force and she referred the matter to Lieutenant Saladini. Lieutenant Saladini never contacted Sadler regarding the matter.

A Wallens Ridge correctional officer issued a false disciplinary report to Sadler after Sadler filed a complaint against him. Lieutenant Saladini informed Sadler that he knew the report was false and that he would submit a statement on Sadler's behalf at the hearing in Virginia. Lieutenant Saladini did provide Sadler with a statement prior to the hearing, but Sadler claims the statement did not exonerate him of the false charge. The hearing officer found Sadler guilty of the charge.

Sadler suffers from a skin condition that makes it painful for him to shave his face. Medical staff at Wallens Ridge did not provide him with treatment for this condition. He then received disciplinary tickets for violating the prison's policy requiring inmates to shave. Sadler filed grievances with Virginia prison officials and the Virginia Health Services Unit. These grievances

were denied in August and September 2000. Sadler also sent complaints to Milling and spoke to

DOC Lieutenant Woodcock regarding the lack of treatment of his medical condition. Neither

Woodcock nor Milling responded to his complaints. Milling referred his complaints to Lieutenants

Woodcock and Saladini and Patricia Ottolini, an employee of the Connecticut DOC Health Services

Unit.

On October 12, 2000, Sadler wrote to the Connecticut Department of Correction Health

Services Unit regarding his medical condition. Only after officials from the Connecticut

Commission on Human Rights and Opportunities visited Sadler did officials from the Connecticut

Department of Correction Health Services Unit visit him. On October 21, 2000, Patricia Ottolini

determined that the plaintiff should be returned to Connecticut for treatment of his medical

condition.

On September 22, 2000, the plaintiff sent a Connecticut DOC grievance to the Connecticut

Interstate Compact Office regarding the conditions at Wallens Ridge. He received no response to

the grievance. On October 23, 2000, he appealed the grievance to Former Commissioner John

Armstrong.

Sadler was returned to the Connecticut DOC on November 3, 2000. He seeks injunctive and

declaratory relief and monetary damages.

<u>Discussion</u>

The Connecticut defendants raise eleven grounds in support of their motion to dismiss: (1)

any section 1983 claims against them in their official capacities for money damages are barred by

the Eleventh Amendment; (2) the State is not a "person" subject to liability under 42 U.S.C. § 1983;

(3) the request for injunctive relief is moot; (4) the complaint fails to state a claim upon which relief

may be granted; (5) the complaint fails to allege the personal involvement of the defendants; (6) Sadler has failed to allege that he has exhausted his administrative remedies; (7) the defendants are protected by qualified immunity; (8) the court should decline to exercise supplemental jurisdiction over the Connecticut state law claims; (9) Sadler has failed to perfect service of the amended complaint; (10) the claims in paragraph seven of the amended complaint (concerning the handcuff incident) are barred by the prior pending action doctrine; and (11) Sadler has failed to join an indispensable party (Wallens Ridge and/or its officials).

As a preliminary matter, the court notes that arguments ten and eleven relate to the claims against the Virginia defendants. Because the court has already severed the claims against the Virginia defendants and transferred them to the Western District of Virginia, the court need not consider these arguments because they are moot.[4] The court considers the remaining arguments below.

I)      Claims for Monetary Damages in Official Capacity

The defendants contend that any section 1983 claims against them in their official capacities for monetary damages are barred by the Eleventh Amendment. Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 342 (1979). The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. See Kentucky v. Graham, 473

---

[4]This is without prejudice to the Defendants again raising the issue of whether the Virginia Defendants are indispensable parties to this action.

U.S. 159 (1985).  A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

In the amended complaint, Sadler names defendants Armstrong and Milling in their official and individual capacities.  Because an award of damages against these defendants in their official capacities is barred by the Eleventh Amendment, the motion to dismiss is granted as to the claims for monetary damages against defendants Armstrong and Milling in their official capacities.[5]

II.    Injunctive Relief

Sadler seeks an order enjoining defendants Armstrong and Milling from transferring him back to a facility in Virginia or another state's correctional facility unless they comply with the requirements set forth in Connecticut General Statutes §18-105, et seq., the Interstate Corrections Compact.  The defendants argue that Sadler's request for injunctive relief is moot because he is no longer incarcerated in Virginia and it is speculative whether he would ever be transferred out of state.

A prisoner has no constitutional right to be incarcerated in a particular institution; he may be transferred for any reason or for no reason at all.  See Meachum v. Fano, 427 U.S. 215, 225-28 (1976) (transfer of an inmate from one correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules."); Olim v. Wakinekona, 461 U.S. 238, 248

---

[5]  The defendants also contend that Sadler's official capacity claims are barred because the State of Connecticut is not a person subject to liability under 42 U.S.C. § 1983.  Sadler contends that he is not suing the State of Connecticut, but rather these individuals.  Because the Court concludes that Sadler's official capacity claims for money damages against the defendants are barred by the Eleventh Amendment and he has not named the State of Connecticut, the Court need not address the defendants' additional argument.

(1983) (inmates have no right to be confined in a particular state or a particular prison within a

given state). Prison officials have absolute discretion in determining where an inmate will be

incarcerated. See Conn. Gen. Stat. § 18-86; Cofone v. Manson, 594 F.2d 934, 938 (2d Cir. 1979)

(court held that inmate has no justifiable right or expectation based on Connecticut law that he

would not be transferred to another correctional institution); Montanye v. Haynes, 427 U.S. 236,

242-43 (1976) (state prisoners have no protectable liberty interest in original or preferred place of

confinement in light of unfettered discretion of state prison officials); Meriwether v. Coughlin, 879

F.2d 1037, 1047 (2d Cir. 1989) ("It is well established that the transfer of prisoner from one

institution to another does not invoke protection from the due process clause").

     Because prison officials have broad discretion to determine where a prisoner will be

incarcerated, Sadler has no colorable right to prevent transfer to another prison facility in Virginia,

or elsewhere. In addition, Sadler does not allege how the defendants violated the requirements of

the Interstate Corrections Compact. Thus, his claim that any future transfer to a prison facility

outside of Connecticut would not meet the requirements of the Interstate Corrections Compact is

speculative. Finally, the Connecticut DOC has recently announced that it will not send prisoners to

Virginia in the future. Possible future harm is insufficient to support a motion for injunctive relief.

See Shapiro, 51 F.3d at 332. Accordingly, the motion to dismiss is granted as to Sadler's claim for

injunctive relief.

III.    Failure to State a Claim Upon Which Relief May be Granted

     The defendants contend that Sadler has failed to state a claim for relief against them. The

court agrees as to the claims against Deputy Commissioner Tokarz.

     Sadler alleges that he wrote to defendant Tokarz in September 2000, concerning his transfer

to Wallens Ridge, because Sadler believed that he should have been transferred to a lower level

prison facility.   Sadler claims that defendant Tokarz did not respond to his letter.  As stated above, a prisoner has no constitutional right to be incarcerated in a particular institution; he may be transferred for any reason.   See Meachum, 427 U.S. at 225-28; Olim, 461 U.S. at 248.  The place of confinement of an inmate is within the sole discretion of prison officials.  See; Montanye, 427 U.S. at 242-43; Cofone, 594 F.2d at 938; Conn. Gen. Stat. § 18-86.   Thus, the claim against defendant Tokarz concerning the decision to transfer Sadler to Wallens Ridge fails to state a claim upon which relief may be granted and is dismissed.

The remaining Connecticut defendants argue that Sadler failed to state a claim against them because they were not responsible for the allegedly unconstitutional conditions of confinement during his confinement at Wallens Ridge.  Sadler alleges that defendants Armstrong, Masella, Milling, Ottolini, Saladini and Woodcock failed to remedy continuing violations of his right to adequate medical care, delivery of legal mail, failure to provide cold weather clothing and safe and smoke-free conditions of confinement at Wallens Ridge, after having been informed of those violations.  Thus, Sadler's claim is not that the Connecticut defendants caused or were responsible for the conditions, but rather that after learning of these conditions of confinement, they took no action to remedy the problems.  Because the defendants did not address this argument in their motion, these claims against these defendants for failing to remedy unconstitutional conditions of confinement at Wallens Ridge remain pending and will not be dismissed at this time.

IV.   Personal Involvement

The defendants contend that Sadler failed to allege their personal involvement in the unconstitutional conditions of confinement at Wallens Ridge.  It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff

must demonstrate the defendant's direct or personal involvement in the actions which are alleged to

have caused the constitutional deprivation.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

As to supervisory officials:

> The personal involvement of a supervisory defendant may be shown
> by evidence that:  (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being informed of the
> violation through a report or appeal, failed to remedy the wrong, (3)
> the defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates by failing to
> act on information indicating that unconstitutional acts were
> occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks and citations

omitted).  The plaintiff must "allege a tangible connection between the acts of the defendants and

the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).  The mere fact that a

defendant is a high ranking prison official is insufficient to demonstrate his liability, as respondent

superior does not apply to §1983 claims.  See Colon v. Coughlin, 58 F.3d at 874.

Sadler argues that although the defendants did not directly cause the unconstitutional

conditions at Wallens Ridge, they were indirectly involved because they failed to take any action to

correct the situation after he informed them of the conditions verbally and in writing.  Sadler's

allegations that he wrote or complained to Former Commissioner Armstrong, Compact Supervisor

Milling, Lieutenants Saladini and Woodcock, Captain Masella and Health Services Supervisor

Ottolini concerning continuing violations of his right to adequate medical care, delivery of legal

mail, failure to provide cold weather clothing and safe and smoke-free conditions of confinement at

Wallens Ridge, but that these defendants failed to remedy the conditions meets the requirement for alleging supervisory liability in the context of addressing a motion to dismiss.

Thus, construing the amended complaint liberally, as the court must when considering a motion to dismiss, the court cannot conclude that Sadler will not be able to present evidence demonstrating the involvement of defendants Armstrong, Milling, Saladini, Masella, Woodcock and Ottolini in his claims. Accordingly, the defendants' motion to dismiss is denied on this ground. The defendants may revisit this argument on summary judgment or at trial.

V.     Exhaustion of Administrative Remedies

Sadler alleges that he has exhausted his administrative remedies as to the claims in the amended complaint. He also claims that Connecticut prison officials did not adequately explain the process for exhausting his administrative remedies as to the conditions in Virginia.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Supreme Court has also held that inmates must exhaust administrative remedies regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001). This requirement of complete exhaustion of administrative remedies must be satisfied before a federal action is commenced. See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001)

(holding that an inmate may not avoid the requirements of 42 U.S.C. § 1997e(a) by exhausting administrative remedies after filing a civil rights action in federal court).

In this Circuit, failure to exhaust administrative remedies is considered an affirmative defense that must be pleaded and proved by the defendants. Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) (referencing exhaustion of administrative remedies as one of several affirmative defenses); Reyes v. Punzal, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002) ("in the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense . . . and . . . defendant bears the burden of proving plaintiff's failure to comply with the exhaustion requirement"); McCoy v. Goord, No. 01Civ. 3133(DC), 2003 WL 1479232 at * 3 (S.D.N.Y. March 25, 2003) ("Most circuits that have considered the issue, however, including this circuit, have held that non-exhaustion is an affirmative defense, and that therefore defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity.").

As mentioned, Sadler's claims against the Connecticut defendants are that on numerous occasions he informed them of the alleged unconstitutional conditions of confinement at Wallens Ridge and they failed to respond to his complaints or remedy the conditions. Sadler alleges in his amended complaint that he submitted letters and filed grievances concerning the claims in the amended complaint. He alleges that he exhausted all available administrative remedies, but was unable to submit copies of the grievances and letters with his amended complaint because he could not pay the costs to copy those documents. He also contends that Defendant Milling did not inform him that, in addition to filing grievances with Virginia prison officials, he must also file separate grievances with the Connecticut Department of Correction regarding the conditions of confinement in Virginia. The court cannot conclude that Sadler would not be able to provide evidence of his

attempts to exhaust his administrative remedies.  Because the court must accept the plaintiff's

allegations as true, the defendants' motion to dismiss is denied on the ground that the plaintiff failed

to exhaust his administrative remedies.[6]  The defendants may raise this argument in a motion for

summary judgment or at trial.

VI.     Qualified Immunity

The defendants argue that they are entitled to qualified immunity as to the claim that Sadler

was improperly transferred to Wallens Ridge.  The only claim concerning his transfer is directed at

Deputy Commissioner Tokarz.  Because the court has dismissed all claims against defendant

Tokarz, the qualified immunity argument is moot.  Accordingly, the motion to dismiss is denied on

this ground.

VII.    State Law Claims

The plaintiff claims that the defendants violated his rights pursuant to Connecticut General

Statutes §§ 18-106 et seq. (the Interstate Corrections Compact authorizing statutes) and 46a-51, et

seq., (the Connecticut Human Rights and Opportunities statutes).   The defendants argue that the

court should decline to exercise supplemental jurisdiction over these state law claims because it has

dismissed the plaintiff's federal claims.  Supplemental or pendent jurisdiction is a matter of

discretion, not of right.  Thus, the court need not exercise supplemental jurisdiction in every case.

See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966).  The federal court should

exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial

economy, convenience and fairness to the litigants.  The court should decline to exercise

_____

[6]  The court notes that the defendants have attached the affidavits of Lynn Milling and Patricia Ottolini regarding the plaintiff's filing of grievances concerning the conditions of confinement in Virginia.  The court has not converted the motion to dismiss to a motion for summary judgment.  Thus, the court does not consider the affidavits in ruling on this motion.

supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent.  See Id. at 726.

The court has dismissed all federal claims against defendant Tokarz.  Thus, the court declines to exercise jurisdiction over Sadler's state law claims against and Tokarz.  The federal claims against defendants Armstrong, Milling, Saladini, Masella, Woodcock and Ottolini remain. Accordingly, the court denies the motion to dismiss as to the state law claims against these defendants.

VIII.    Service of the Amended Complaint on the Connecticut Defendants

The defendants next argue that all claims against them in their individual capacities must be dismissed because service has never been effected on them.

Rule 4(m) provides in relevant part:

> If service of the summons and complaint is not made upon a
> defendant within 120 days after the filing of the complaint, the court,
> . . . shall dismiss the action without prejudice as to that defendant or
> direct that service be effected within a specified time provided that
> if the plaintiff shows good cause for the failure, the court shall extend
> the time for service for an appropriate period.

When an inmate files an action in forma pauperis the responsibility for service is assumed by the court.  See 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process . . . ."); Antonelli v. Sheahan, 81 F.3d 1422, 1426 (7th Cir. 1996) (an inmate may rely on the United States Marshal Service to serve process); Armstrong v. Sears, 33 F.3d 182, 188 (2d Cir. 1994) (an incarcerated inmate proceeding in forma pauperis is entitled to rely on service by the U.S. Marshal). On January 22, 2002, the court issued an order directing Sadler to complete certain forms to enable the United States Marshal to serve the complaint on the defendants in their individual and official

14

capacities.  The plaintiff returned completed United States Marshal service forms to the court in

February 2002, and the Clerk forwarded the papers to the United States Marshal for service on the

defendants on February 27, 2002.  The plaintiff did not name defendants Ottolini or Woodcock in

the original complaint.  On March 8, 2002, defendants Armstrong, Tokarz, Rowland, Saladini,

Masella and Milling were served in their official capacities.  (See doc. # 10.)  There are no returns

of service for the Connecticut defendants in their individual capacities.  Because an inmate must

rely on the court and the United States Marshal Service to effect service of the complaint, any delay

attributed to the court or the Marshal Service "automatically constitutes 'good cause' preventing

dismissal under Rule 4(m)."  Mitchell v. Shomig, 969 F. Supp. 487, 493 (N.D. Ill. 1997) (citing

Graham v. Satkoski, 51 F.3d 710, 713 (7th Cir. 1995)); see also Wilson v. Vaughn, No. CIV.A 93-

6020, 1996 WL 528870 (E.D. Pa. Mar. 14, 1996).  Thus, the court will not dismiss this action as to

defendants Armstrong, Milling, Saladini, Masella, Woodcock and Ottolini for failure to effect

service in a timely manner because that matter was not within plaintiff's control.  The motion to

dismiss is denied on this ground.

<u>Conclusion</u>

Accordingly, the Motion to Dismiss [doc. # 85] filed by the Connecticut defendants is

GRANTED as to claims for monetary damages against defendants Armstrong and Milling in their

official capacities, and all claims for injunctive relief and all federal and state law claims against

defendant Tokarz.   The case remains pending against defendants Armstrong, Milling, Saladini,

Masella, Woodcock and Ottolini.  The Clerk is directed to contact the United States Marshal's

Service to locate the returns of service for defendants Armstrong, Milling, Masella and Saladini and to complete service of the amended complaint on all six defendants[7] in their personal capacity.

SO ORDERED at Hartford, Connecticut, this __13th__ day of September, 2004.

_____/s/ CFD_____
CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE

---

[7]If Lieutenant Woodcock remains unavailable for service due to his military obligations, counsel is free to request appropriate action by the Court.