UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY SADLER | : | |
| | : | PRISONER |
| vs. | : | CASE NO. 3:01CV1786 (CFD)(WIG) |
| | : | |
| JOHN ROWLAND, et al. | : | |

## RULING ON MOTIONS TO DISMISS AND FOR CHANGE OF VENUE

The plaintiff, Gary Sadler, filed this civil rights action, pro se and in forma pauperis pursuant to 28 U.S.C. § 1915 against the former governor of the State of Connecticut, seven employees of the Connecticut Department of Correction ("DOC") and ten employees of the Virginia Department of Correction.[1]

Sadler is currently an inmate at the State of Connecticut MacDougall Correctional Institution. His claims relate to his prior incarceration at the State of Virginia Wallens Ridge Prison from January to November 2000. Sadler had been transferred there from a DOC facility by DOC order pursuant to the Connecticut Interstate Corrections Compact authorized by Conn. Gen Stat. § 18-106, et seq. He invokes 42 U.S.C. §§ 1981, 1983, 1985 and 1986, and claims violations of the First, Fourth, Eighth and Fourteenth Amendments to the U. S. Constitution as well as Connecticut law. The Virginia defendants move to dismiss the amended complaint on the ground that this court lacks personal jurisdiction over them. In response, Sadler moves to transfer this case to the United

---

[1] The Connecticut defendants are: Governor John Rowland, Former DOC Commissioner John Armstrong, Former DOC Deputy Commissioner Jack Tokarz, Interstate Compact Supervisor Lynn Milling, Captain Masella, DOC Health Services employee Patricia Ottolini and DOC Lieutenants Woodcock and Saladini. The Virginia defendants are: Regional Director of the Virginia Department of Correction Richard Young, Warden of Wallens Ridge State Prison Stanley Young, Correctional Officers O'Quinn, King, Rich, Fleming and Flanary, Grievance Coordinator Rider, Counselor Supervisor Hensley and Counselor Mabe. Two other Virginia Defendants were previously named in the original complaint (Count and Elam), but they were not named in the amended complaint and thus are dismissed.

States District Court for the Western District of Virginia. For the reasons discussed below, the motions to dismiss[2] are denied, the motion for change of venue is granted in part, the claims against the Virginia defendants are severed and transferred to the United States District Court for the Western District of Virginia.

Standard of Review

When personal jurisdiction is challenged through a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the burden of showing that the court has jurisdiction over the defendant. See DiStephano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001) ("'When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.'") (quoting Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). The plaintiff must make a prima facie showing, which may include affidavits and other evidence, that the defendants' conduct was sufficient for the court to exercise personal jurisdiction. See Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) ("If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.").

In ruling on a motion to dismiss, the court must construe the pleadings and affidavits in the light most favorable to the plaintiff, "regardless of the controverting evidence put forth by the defendant. " United State Surgical Corp. v. Imagyn Med. Tech., Inc., 25 F. Supp. 2d 40, 44 (D. Conn. 1998) (citing A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d cir. 1993)).

---

[2] Defendants Mabe and Hensley filed one motion to dismiss and the remaining Virginia defendants filed the second motion to dismiss. Both motions seek to dismiss the case on the ground of lack of personal jurisdiction.

Vague and conclusory allegations, however, "are not enough to establish personal jurisdiction." Harris v. Wells, 832 F. Supp. 31, 34 (D. Conn. 1993) (citing Shaw v. American Cyanamid Co., 534 F. Supp. 527, 528 (D. Conn. 1987)).

 A federal court may exercise personal jurisdiction over a defendant who is not a citizen of the forum state only if the forum state's long-arm statute authorizes the exercise of such jurisdiction. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997) ("In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules 'if the federal statute does not specifically provide for national service of process'") (quoting Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990); Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 105 (1987) (because section 1983 does not provide for service of process beyond state borders, the district court requires authorization from the state long-arm statute before it may exercise personal jurisdiction over the out-of-state defendants). If the court concludes that the state's long-arm statute authorizes the exercise of jurisdiction over the defendant, the court must then determine whether the application of the statute satisfies the "minimum contacts" requirement of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

 The relevant Connecticut long-arm statute provides that a court may exercise jurisdiction over a nonresident defendant individual

> "who in person or through an agent : (1) Transacts any business within the state; (2) commits a tortious act within the state . . .; (3) commits a tortious act outside the state causing injury to a person or property within the state . . . if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives

>   substantial revenue from interstate or international commerce; (4)
>   owns, uses or possesses real property situated within the state; or (5)
>   uses a computer . . . or a computer network . . . located within the
>   state."

Conn. Gen. Stat. 52-59b(a).

## Facts

Sadler alleges in his amended complaint the following: All of the Virginia defendants are employed by the Virginia Department of Correction and all but Regional Director Young work at the Wallens Ridge State Prison in Big Stone Gap, Virginia. The Connecticut Department of Correction transferred Sadler to Wallens Ridge State Prison in January 2000 and during his incarceration in Virginia, correctional staff failed to timely respond to his requests to informally resolve various complaints concerning his conditions of confinement.

Grievance Coordinator Rider failed to properly respond to his grievances and Wallens Ridge staff failed to make copies of the complaints and grievances to send to Lynn Milling, the Connecticut Interstate Compact Supervisor.

From January to March 2000, Wallens Ridge staff failed to provide Sadler with proper clothing for outside recreation and placed him in a housing unit that permitted inmates and staff to smoke. He became sick as a result. He then filed grievances with Warden Young and appealed the grievances to Director Young.

Virginia Prison staff also interfered with his mail. Warden Young and Director Young also denied Sadler's grievances concerning the interference with mail.

Sadler also requested dental treatment, but did not receive it.

In March 2000, a Wallens Ridge correctional officer used excessive force in applying handcuffs too tightly to Sadler's wrists. He did not receive medical treatment for the injuries that

resulted. Sadler filed grievances with Warden Young and Director Young concerning the use of excessive force and denial of medical treatment.

Sadler suffers from a skin condition that makes it painful for him to shave his face. Wallens Ridge medical staff did not provide him with treatment for this condition. Sadler received disciplinary tickets due to the fact that he had violated the prison's policy requiring inmates to shave. He then filed grievances with Warden Young, Director Young and the Virginia Health Services Unit. These grievances were denied in August and September 2000. Connecticut prison officials visited Sadler in October 2000, and determined that he should be returned to Connecticut due to his medical condition. Virginia Department of Correction officials returned the plaintiff to the Connecticut Department of Correction in November 2000.

In August 2000, Correctional Officer O'Quinn issued a disciplinary report against Sadler for failing to shave. Sadler was unable to present evidence in his defense. The disciplinary hearing officer found him guilty and issued sanctions. Warden Young and Director Young denied Sadler's appeals.

From June to November 2000, prison officials at Wallens Ridge denied Sadler's mother the opportunity to visit him. Sadler was unable to resolve the problem through the grievance procedure.

In August 2000, Officer King sprayed Sadler with a cleaning agent. Other officers refused to provide Sadler with immediate medical treatment. He received medical treatment only after he filed a grievance. Warden Young and Director Young denied his grievances and appeals concerning the use of excessive force by Officer King.

Counselor Mabe refused to notarize Sadler's criminal complaint against Officer King and Counselor Supervisor Hensley failed to investigate the matter. Warden Young and Director Young

denied his grievances and appeals concerning Counselor Mabe's refusal to notarize Sadler's document.

Officers Flanary and Rich issued false disciplinary reports to Sadler in retaliation for his seeking to file charges against Officer King. A hearing officer found Sadler guilty of both charges and Warden Young and Director Young denied his appeals of the guilty findings. Officer Fleming issued a false disciplinary report to Sadler after he filed a complaint against him. Again, a hearing officer found the Sadler guilty of the charge and Warden Young and Director Young denied Sadler's appeals of the guilty finding.

Sadler was returned to the Connecticut Department of Correction in November 2000. In this suit he seeks injunctive and declaratory relief and monetary damages.

## Discussion

Sadler has sued the Virginia defendants only in their individual capacities. There are no allegations that any of the Virginia defendants ever personally transacted business in Connecticut, committed a tortious act within Connecticut, own property in Connecticut or used a computer or computer network located in Connecticut. In addition, the alleged unconstitutional conditions of confinement and acts did not occur in Connecticut, but in Virginia.

In response to the motion to dismiss, Sadler argues that the Virginia Department of Correction houses Connecticut inmates pursuant to a contract it has with the Connecticut Department of Correction. He identifies the contract as the Interstate Corrections Compact. He claims that this court has personal jurisdiction over the defendant employees of the Virginia Department of Correction by virtue of the Interstate Corrections Compact.

The Connecticut Interstate Corrections Compact provides for the exchange of inmates between states. "The purpose of the compact is to provide for the mutual development and execution of such programs of cooperation [between states] for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources." Conn. Gen. Stat. § 18-106, Art. I. The Compact, by its terms, does not give this court personal jurisdiction over the Virginia defendants. It also does not evidence contacts by any of the Virginia correctional officers with the State of Connecticut. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13 (1983) ("Jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . Each defendant's contacts with the forum State must be assessed individually") (citations omitted); Rush v. Savchuk, 444 U.S. 320, 332 (1980) (The requirements of International Shoe . . . must be met as to each defendant over whom a court exercises jurisdiction).

Sadler has failed to demonstrate that Connecticut General Statutes § 52-59b(a) authorizes the exercise of personal jurisdiction over the Virginia defendants in this action.[3] Instead of dismissing this action, however, the court exercises its statutory and inherent authority to sever the claims against the Virginia defendants and transfer those claims to the U. S. District Court for the Western District of Virginia.

A transfer may be made under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). Section 1404 provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

---

[3] Because the court has concluded that the plaintiff has alleged no basis upon which this court may acquire personal jurisdiction, it need not reach the question of the application of the Due Process Clause of the Fourteenth Amendment.

Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The U. S. Supreme Court and the United States Court of Appeals for the Second Circuit have held that a district court has the power to transfer a case to another judicial district, whether or not the transferring court has personal jurisdiction over the defendant.  See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962) ("Nothing in th[e] language [of section 1406] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants.");  SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172 (2d Cir.) (finding that lack of personal jurisdiction can be cured by transfer to a district in which personal jurisdiction can be exercised under section 1404(a)), cert. denied, 531 U.S. 824 (2000); Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80 (2d Cir. 1978)(holding that court had the power to transfer the case although it lacked personal jurisdiction over all of the defendants and finding such transfer to be in the interest of justice, in part because "transfer would apparently enable appellant to obtain personal jurisdiction over some or all of the defendants").  Transfer is favored to remove procedural obstacles including "the lack of personal jurisdiction, improper venue and statute of limitations bars" and thus to permit adjudication on the merits.  Sinclair v. Kleindienst, 711 F.2d 291, 294 (D.C. Cir. 1983).

The decision whether to transfer or dismiss a case pursuant to 28 U.S.C. § 1406 lies within the sound discretion of the district court judge.  See Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir.1993).  A district court may transfer a case on a motion by either party or sua sponte on its own motion.  See Lead Industries Ass'n, Inc. v. Occupational Safety and Health Admin., 610 F.2d

70, 79 n.17 (2d Cir. 1979) ("the broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer sua sponte"); Concession Consultants, Inc. v. Mirisch, 355 F.2d 369, 371-72 n.3 (2d Cir. 1966) ("where the motion asks only that the suit be dismissed, the court may properly, sua sponte, order it transferred [pursuant to 28 U.S.C. § 1406(a)]").

Severance[4] and transfer of the claims against the Virginia defendants to the Western District of Virginia is in the interests of justice. First, the alleged events giving rise to the claims against the Virginia defendants all occurred in Virginia. Second, most of the witnesses and other evidence relating to Sadler's claims are located there. Third, if the court were to dismiss the claims against the Virginia defendants, any new action filed by Sadler in Virginia may be barred by the statute of limitations governing section 1983 actions. See Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993) (court held that transfer of case, when the statute of limitations had run, was in the interests of justice). Accordingly, in the interests of justice, the court severs the claims against defendants Regional Director Richard Young, Warden Stanley Young, Officers O'Quinn, King, Rich, Fleming and Flanary, Grievance Coordinator Rider, Counselor Supervisor Hensley and Counselor Mabe and transfers those claims to the Western District of Virginia pursuant to 28 U.S.C. § 1406 (a).

---

[4] Fed. R. Civ. P. 21 provides that, "[a]ny claim against a party may be severed and proceeded with separately." See Westvaco Corp. v. Viva Magnetics, Ltd., No. 00 Civ.9399 (KNF), 2003 WL 21136729 (S.D.N.Y. May 15, 2003) (court severed claims against two of four defendants over whom it lacked jurisdiction under Rule 21, Fed. R. Civ. P. and transferred claims to Central District of California pursuant to 28 U.S.C. § 1406(a)); In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, Nos. 02 MDL 1484, 02 CV 8474 (MP), 2003 WL 1571998, at *155 (S.D.N.Y. Mar. 27, 2003) ("Rule 21 gives the court tools to jettison those parties and claims that are not within its jurisdiction or that are not conveniently prosecuted together, preserving parties and claim that are properly before it.") (quoting 4 Moore's Federal Practice, §§ 21.02[4], 21.05 (Matthew Bender 3d ed. 2002)).

Conclusion

Accordingly, the Motions to Dismiss [docs. ## 43, 62] filed by the Virginia defendants are DENIED.  The plaintiff's Motion for Change of Venue [doc. # 52] is GRANTED to extent that it seeks to transfer the claims against the Virginia defendants to the Western District of Virginia, but DENIED as to the claims against the Connecticut Defendants.  The claims against the Virginia defendants, Regional Director of the Virginia Department of Correction Richard Young, Warden of Wallens Ridge State Prison Stanley Young, Correctional Officers O'Quinn, King, Rich, Fleming and Flanary, Grievance Coordinator Rider, Counselor Supervisor Hensley and Counselor Mabe, are severed and the Clerk is directed to transfer the severed claims to the Clerk of the District Court for the Western District of Virginia.  The court addresses the motion to dismiss filed by the Connecticut defendants in a separate ruling.

SO ORDERED at Hartford, Connecticut, this   13th   day of September, 2004.


　　　　　　　　　　　　　　　　　　 /s/ CFD
　　　　　　　　　　　　　　　　　CHRISTOPHER F. DRONEY
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE